### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RICHARD WATSON,**

     **Plaintiff,**

**v.**

**COACHMEN RECREATIONAL**
**VEHICLE COMPANY, LLC,**

     **Defendant.**                   **Case No. 05-CV-524-DRH**

### MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. INTRODUCTION

This matter comes before the Court on defendant Coachmen Recreational Vehicle Company, LLC's ("Defendant" or "Coachmen") Motion to Dismiss (Doc. 8), with supporting Memorandum (Doc. 9), to which plaintiff Richard Watson ("Plaintiff" or "Watson") filed his opposing Response (Doc. 12). Defendant essentially makes three separate arguments as to why Plaintiff's Complaint should be dismissed in its entirety. Plaintiff originally filed his suit against Defendant in the Circuit Court of St. Clair County, Illinois, on June 9, 2005 (Doc. 2). Defendant removed Plaintiff's suit to federal court, based upon federal question jurisdiction, **28 U.S.C. § 1331**, on July 29, 2005 (Doc. 1). However, Plaintiff did not move for a remand.

Plaintiff's Complaint against Defendant originally consisted of seven

Page 1 of 25

counts[1] (Doc. 2), stated as follows:

| | |
|---|---|
| **Count I** | Breach of Written Warranty (pursuant to the Magnuson-Moss Warranty Act ("MMWA"), **15 U.S.C. § 2301(6)**) |
| **Count II** | Breach of Implied Warranty of Merchantability |
| **Count III** | Breach of Implied Warranty of Fitness for a Particular Purpose |
| **Count IV** | Breach of Implied Warranty of Habitability and Workmanship |
| **Count V** | Violation of **16 C.F.R. § 700.5** |
| **Count VI** | Violation of **16 C.F.R. § 701.3** |
| **Count VII** | Violation of **15 U.S.C. § 2303** and **16 C.F.R. § 702.3**[2] |

Plaintiff attached two exhibits to his Complaint:  Exhibit A is the Retail Installment Contract and Security Agreement between Plaintiff and U.S. Bank, stating the total sale price of the Motor Home as $204,848.20; Exhibit B is an undated letter sent by Plaintiff to Defendant, addressed to "Coachmen Recreational Vehicle Company, LLC, Attn: Legal Department" (Doc. 2, Exs. A & B).

---

[1] In its Response to Defendant's MTD, Plaintiff states that he "withdraws his non-disclosure 16 C.F.R. § 702.3 and 15 U.S.C. § 2302 averment against Defendant.  This issue is therefore moot" (Doc. 12, p. 16).  As such, Plaintiff now actually brings forth a six-count Complaint against Defendant.

[2] *See* note 1, *supra*.

## II.  __FACTUAL BACKGROUND__

Plaintiff is an individual and states that he is a resident of Illinois (Doc. 2, ¶ 1).  Further, Plaintiff states that Defendant is a foreign corporation authorized to do business in the State of Arizona and manufacturers fully integrated motor homes (*Id.* at ¶ 2).  On or about November 15, 2004, Plaintiff states that he purchased a 2004 Coachmen Cross County Motor Home (the "Motor Home"), manufactured by Defendant, for the total purchase price (partially financed) of $204,848.20 (*Id.* at ¶ 3 and Ex. A - Retail Installment Contract).  Defendant asserts that Plaintiff actually purchased the Motor Home through Howard R.V. Super Center of St. Louis (which is *not* a party to Plaintiff's suit) (*see* Doc. 9, p. 3).

Plaintiff alleges that with his purchase of the Motor Home, Defendant provided a written warranty (the "Warranty"), which "represented itself and was represented by [Defendant's] authorized sales agents and advertisements as offering coverage on the entire Motor Home and all its parts, components and features, as well as other warranties fully outlined in Full Warrantor's[3] warranty documents" (Doc. 2, ¶ 4).  Plaintiff continues to allege that Defendant intended the consumer to view the Motor Home as "warranted," which thereby induced Plaintiff's purchase (*Id.*).  Upon Plaintiff's purchase of the Motor Home, Defendant allegedly provided Plaintiff with a complete disclosure of the terms of its Warranty in attempts to limit

---

[3]  Plaintiff has chosen to call Defendant "Full Warrantor" throughout his Complaint and Response.  However, the Court will not adopt such a moniker for Defendant, as it represents a legal conclusion at this stage of the case.

its obligations to repair or replace defects in the material or workmanship of the Motor Home along with other various exclusions (*Id*. at ¶ 6).

After taking possession of the Motor Home, Plaintiff alleges he shortly thereafter experienced various defects and non-conformities with the Motor Home that diminished its value and/or substantially impaired its use - such defects including but not limited to: "defective exterior trim, defective living room slide, defective windshield, defective interior trim, defective floor, defective paint, persistent stress cracks, defective leveling system" (*Id*. at ¶ 8).  Plaintiff allegedly provided Defendant a "sufficient opportunity to repair the defects, non-conformities and conditions" found within the Motor Home and its components, pursuant to Defendant's issued Warranty, but Defendant failed to make the repairs (*Id*. at ¶ 9). Thus, Plaintiff alleges that the Warranty "failed of its essential purpose" (*Id*. at ¶ 10), and the Motor Home cannot now be used as intended by Plaintiff at the time of purchase, further diminishing its value and impairing its use (*Id*. at ¶ 12).  However, Plaintiff states that he properly provided written notice via a letter to Defendant of the Motor Home's defects, Defendant's statutory and common law violations and Plaintiff's resultant demand for compensation on May 18, 2005 (*Id*. at ¶ 18 and Ex. B - Letter).  Defendant allegedly refused to compensate Plaintiff (*Id*. at ¶ 19), thereby causing Plaintiff to bring forth the instant suit.

### III.  **ANALYSIS**

**A.      LEGAL STANDARD**

Defendant has filed its Motion to Dismiss (Doc. 8) pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**, for failure to state a claim.  When considering a motion to dismiss pursuant to **Rule 12(b)(6)**, the Court must determine whether the Plaintiff's Amended Complaint states a claim upon which relief can be granted.  *See* **Fed. R. Civ. P. 12(b)(6)**.  As part of its scrutiny, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff.  *See Szumny v. Am. Gen. Fin.*, **246 F.3d 1065, 1067 (7th Cir. 2001)(applying this standard to a Rule 12(b)(6) motion)**.  The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint.  *Weiler v. Household Fin. Corp.*, **101 F.3d 519, 524 n.1 (7th Cir. 1996)**.  A court will grant a motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations.  *Forseth v. Village of Sussex*, **199 F.3d 363, 368 (7th Cir. 2000)**.

In federal court, it is very difficult for a moving party to prevail on a **Rule 12(b)(6)** motion.  When filing a **Rule 12(b)(6)** motion in federal court, a party should be mindful of the fact that "[f]ederal complaints plead *claims* rather than facts."  *Kolupa v. Roselle Park Dist.*, **438 F.3d 713, 713 (7th Cir. 2006)**.  **FEDERAL RULE OF CIVIL PROCEDURE 8(a)** only requires a claim contain "a short and plain statement" stating the jurisdictional basis for bringing the claim in federal

court, that the pleader is entitled to relief, and a demand for judgment for the relief sought.  As the Seventh Circuit has recently reiterated, "[i]t is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate." ***Id.* (citing *Swierkiewica v. Sorema N.A.*, 534 U.S. 506 (2002); *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427-28 (7th Cir. 2005); *Barholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1077-78 (7th Cir. 1992))**.  Therefore, the requirement that a plaintiff state a *prima facie* case within the complaint is obviated in federal court.

The details the moving party usually seeks in a **Rule 12(b)(6)** motion should typically surface after the parties have engaged in the pre-trial discovery process, unless the district court should order the plaintiff to file a more definite statement, pursuant to **FEDERAL RULE OF CIVIL PROCEDURE 12(e)**.  ***Id.***  Pleading specific facts is only a requirement in federal court when the claim falls within the narrow scope of **FEDERAL RULE OF CIVIL PROCEDURE 9(b)** (claims regarding fraud or mistake).  ***Id.* at 715**.  Accordingly, when considering a **Rule 12(b)(6)** motion, the Court must remember that "[a]rguments that rest on negative implications from silence are poorly disguised demands for fact pleading." ***Id.***

## B.   DEFENDANT'S MOTION TO DISMISS

As previously stated, Defendant essentially makes three arguments within its Motion to Dismiss Memorandum of Law as to why Plaintiff's Complaint against it should be dismissed in its entirety (Doc. 9).  The Court will address each

of Defendant's arguments separately to analyze whether any of Plaintiff's claims do not survive the **Rule 12(b)(6)** scrutiny to warrant their dismissal.

### 1.    Breach of the Warranty

Defendant's first attacks Count I of Plaintiff's Complaint – Breach of Written Warranty pursuant to MMWA, 15 U.S.C. § 2301(6)[4] (Doc. 9, pp. 2-4). Defendant asserts that Plaintiff has failed to plead the elements as required by Illinois law for this particular cause of action, and further, Plaintiff has failed to attach any warranty documents to his Complaint (*Id.* at 2).  Defendant correctly asserts that the MMWA itself does not provide an independent basis for liability (*Id.* at 3).  However, it does provide for federal jurisdiction for *some* state claims, including a breach of express warranty claim.  ***See Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001)(citing *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir. 1998))**.   Therefore, Plaintiff's breach of written warranty claim stated in Count I is brought pursuant to Illinois law.

---

[4] **15 U.S.C. § 2301(6)** defines "written warranty" under the MMWA as follows:
> **(6)** The term "written warranty" means--
>> **(A)**  any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
>> **(B)**  any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

As a **Rule 12(b)(6)** motion would so argue, Defendant contends that Plaintiff has not properly plead the elements required for a breach of written warranty under Illinois law.  However, as explained previously in this Order, federal law only requires notice-based pleading, unlike Illinois' fact-based pleading requirement.  Therefore, at the motion to dismiss stage, Plaintiff is not required to attach the Warranty, as long as he has apprised Defendant of the general nature of his claim, in compliance with **Rule 8(a)**.

To state a claim for a breach of warranty under MMWA and Illinois law, Plaintiff must show that there was a defect in the item covered under the written warranty, Plaintiff complied with the terms of the warranty, Plaintiff gave Defendant a reasonable opportunity to cure the defect and Defendant failed or refused to cure the defect.  ***Pearson v. DaimlerChrysler Corp.*, 349 Ill. App. 3d 688, 696, 813 N.E.2d 230, 237, 286 Ill. Dec. 173, 180 (1st Dist. 2004)**.  Plaintiff counters in his Response that he has properly plead the essential elements of this cause of action (Doc. 12, pp. 3-4).  He states that he plead the Motor Home was warranted in ¶ 4 of his Complaint, it had defects and/or non-conformities, ¶ 7, he offered a reasonable opportunity to cure said defects, ¶ 9, that Defendant failed to make said repairs within a reasonable opportunity, ¶ 10, and Plaintiff has suffered harm as a result, ¶¶ 12, 19, 20 (Doc. 12, pp. 3-4).

Examining the Complaint, it appears that Plaintiff has plead the necessary elements to state a cause of action for breach of written warranty pursuant

to MMWA – the only discrepancy is that Plaintiff actually lists the defects in ¶ 8 of his Complaint, not ¶ 7.  However, it is unnecessary that Plaintiff plead the elements for a *prima facie* breach of written warranty claim in federal court, as he has obviously made Defendant aware of the general nature of his claim and the relief he seeks.

Defendant also argues that Plaintiff did not give valid notice of the alleged breach of the Warranty as required under the MMWA, and that filing of a lawsuit is generally considered insufficient notice (Doc. 9, p. 3).  Yet, when accepting all factual allegations as true and construing all reasonable inferences in a light most favorable to Plaintiff, the letter attached to Plaintiff's Complaint as Exhibit B appears to give sufficient notice of the alleged breach of the Warranty.  Therefore, Defendant's argument in this regard fails.  Even though the letter itself is not dated, Plaintiff alleges it was sent on May 18, 2005 (Doc. 2, ¶ 18) – which is before Plaintiff's Complaint was initially filed in state court on June 9, 2005.  Defendant fails to cite any relevant and authoritative case law to support its argument that such letter would constitute insufficient notice.  The Court finds that Plaintiff has stated a valid claim under Count I of his Complaint.

**2.**   **Implied Warranties and the Issue of Privity**

Defendant's second main argument in his Motion to Dismiss is made in regard to Plaintiff's claims for breach of various implied warranties and the issue of whether privity is required in order to state such claims.  In his Complaint, Plaintiff brings three Counts against Defendant (Count II - Breach of Implied Warranty of Merchantability; Count III - Breach of Implied Warranty of Fitness for a Particular

Purpose; and Count IV - Breach of Implied Warranty of Habitability and Workmanship) pursuant to **15 U.S.C. § 2310(d)**[5] of the MMWA.  Essentially, Defendant argues that Counts II, III and IV of Plaintiff's Complaint should be dismissed is because no privity of contract exists between itself and Plaintiff (Doc. 9, pp. 4-6).

As Defendant correctly notes, the MMWA defines "implied warranty" as "an implied warranty *arising under State law* (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product." **15 U.S.C. § 2301(7) (emphasis added)**.  Therefore, in this case, the issue

---

[5] **15 U.S.C. § 2310(d) states as follows:**
> **(d)** Civil action by consumer for damages, etc.; jurisdiction; recovery of costs and expenses; cognizable claims
>> **(1)** Subject to subsections (a)(3) and (e) of this section, a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief--
>>> **(A)** in any court of competent jurisdiction in any State or the District of Columbia; or
>>> **(B)** in an appropriate district court of the United States, subject to paragraph (3) of this subsection.
>> **(2)** If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.
>> **(3)** No claim shall be cognizable in a suit brought under paragraph (1)(B) of this subsection--
>>> **(A)** if the amount in controversy of any individual claim is less than the sum or value of $25;
>>> **(B)** if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or
>>> **(C)** if the action is brought as a class action, and the number of named plaintiffs is less than one hundred.

of whether privity of contract is necessary to state a claim for breach of implied warranty under the MMWA turns on whether state law requires privity of contract for implied warranty claims.  Unfortunately, there is disagreement among the state and federal courts in Illinois as to the answer.

      **a.**    ***The Illinois View***

In his Response, Plaintiff urges the Court to follow the line of reasoning established by the Illinois Supreme Court in ***Szajna v. Gen. Motors Corp.***, **115 Ill. 2d 294, 503 N.E.2d 760, 104 Ill. Dec. 898 (1986)** and ***Rothe v. Maloney Cadillac, Inc.***, **119 Ill. 2d 288, 518 N.E.2d 1028, 116 Ill. Dec. 207 (1988)** (Doc. 12, pp. 4-7).   The plaintiff in ***Szajna*** purchased a General Motors ("GM") manufactured 1976 Pontiac Ventura from a Pontiac dealership in Chicago. ***Szajna*,** **115 Ill. 2d at 299, 503 N.E.2d at 761, 104 Ill. Dec. at 900**.  Upon sale of the Ventura, the dealership gave the plaintiff two written warranties extended by GM to a purchaser of a Pontiac Ventura. ***Id.***  The ***Szajna*** plaintiff filed suit against GM for breach of implied warranty under the Illinois UCC and breach of implied warranty under the MMWA. ***Szajna*,** **115 Ill. 2d at 300, 503 N.E.2d at 762, 104 Ill. Dec. at 900**.

The Illinois Supreme Court noted in ***Szajna*** that "privity of contract is a prerequisite in Illinois to a suit for breach of implied warranty alleging economic loss." ***Id.***  However, the high court considered the plaintiff's urging to abolish the privity requirement in suits for breach of an implied warranty when seeking to

recover for economic loss. ***Szajna*, 115 Ill. 2d at 301, 503 N.E.2d at 762, 104 Ill. Dec. at 900**. The Illinois Supreme Court then proceeded to examine the legal dichotomy of the privity requirement for implied warranty claims within a framework of tort law as compared to contract law. ***Szajna*, 115 Ill. 2d at 301-05, 503 N.E.2d at 763-65, 104 Ill. Dec. at 901-03**. Next, the language and intent of the MMWA was discussed, substantially noting the theories proffered in an article authored by Professor Milton Schroeder, titled ***Privity Actions Under the Magnuson-Moss Warranty Act*, 66 Cal. L. Rev. 1 (1978)**. ***Szajna*, 115 Ill. 2d at 315, 503 N.E.2d at 769, 104 Ill. Dec. at 907**.

Relying on the article's rationale, the Illinois Supreme Court concluded that the MMWA allowed the extension of a written warranty by a manufacturer to a consumer to establish the requisite privity sufficient to support an implied warranty as recognized under the Illinois UCC. ***Szajna*, 115 Ill. 2d at 315-16, 503 N.E.2d at 769, 104 Ill. Dec. at 907**. This finding was later reiterated by the Illinois Supreme Court in ***Rothe***, where it noted the MMWA "broadens the reach of the UCC article II implied warranties, affording consumers substantially greater protection against defective goods." ***Rothe*, 119 Ill. 2d at 295, 518 N.E.2d at 1031, 116 Ill. Dec. at 210**. Thus, ***Rothe*** similarly held that where a manufacturer extends an express warranty directly to a plaintiff consumer, a plaintiff may plead a breach of implied warranty claim against the warranting manufacturer. ***Id.***

b.      *The Federal View*

Federal courts in Illinois have taken a different perspective on the privity

issue in more recent years.  Naturally, Defendant urges the Court to adopt the federal

line of reasoning regarding the privity requirement for breach of implied warranty

claims brought pursuant to the MMWA in federal courts in Illinois.  Certainly one of

the most insightful opinions on this topic was issued by the United States District

Court for the Northern District of Illinois in ***Soldinger Associates, Ltd., v. Aston***

***Martin Lagonda of North America, Inc.***, **No. 97-C-7792, 1999 WL 756174 (N.D.**

**Ill. Sept. 13, 1999)**.

The plaintiff in **Soldinger** had purchased a DB7 Volante ("Volante")

manufactured by Aston Martin from an Illinois car dealership.  ***Id.* at \*1**.  The Aston

Martin Volante was covered by a limited written warranty.  ***Id.***  Because of numerous

mechanical problems and defects that occurred within the first few months after the

Volante's purchase and the dealership's inability to repair, the plaintiff sought relief

in federal court.  ***Id.* at \*2-3**.  Among other claims, the plaintiff plead counts for

breach of implied warranty under the Illinois UCC and the MMWA.  ***Id.* at \*3**.

Examining these particular claims, the **Soldinger** court noted that a

plaintiff may only pursue an implied warranty claim under the UCC in Illinois if he

is in privity of contract with the seller, and because there was no privity between the

plaintiff and defendant manufacturer, Aston Martin, summary judgment was granted

in Aston Martin's favor.  ***Id.* at \*6 (citing *Rothe*, 119 Ill. 2d at 292, 518 N.E.2d at**

**1029-30, 116 Ill. Dec. at 208-09**).  Under the MMWA, the Court also found that privity must exist to bring forth a breach of implied warranty claim, despite the plaintiff's contention that the Illinois Supreme Court's rulings in both ***Szajna*** and ***Rothe*** should lead the district court to similarly find privity is not a requirement for an implied warranty claim under the MMWA.  ***Id.* at \*6-7**.  The ***Soldinger*** court examined these two state court opinions at length, but determined that the Illinois Supreme Court's interpretation of the MMWA did not properly consider the legislative intent of Congress in enacting this law.  ***Id.* at \*9-10**.  Instead, the district court felt that the spirit of the MMWA was more appropriately deciphered by the Second Circuit Court in ***Abraham v. Volkswagen of America*, 795 F.2d 238 (2d Cir. 1986)**.

The keystone evidence that convinced the ***Soldinger*** court of the legislative intent was a Senate Report pertaining to § 2308 of the MMWA, which stated:

> It is not the intent of the Committee to alter in any way the manner in which implied warranties are created under the Uniform Commercial Code.  For instance, an implied warranty of fitness for particular purpose which might be created by an installing supplier is not, in many instances, enforceable by the consumer against the manufacturing supplier.  *The Committee does not intend to alter currently existing state law on these subjects*.

***Id.* at \*9 (citing *Abraham*, 795 F.2d at 248 (quoting S. Rep. No. 93-151, at 21 (1973))(emphasis added)**.

The ***Soldinger*** court noted and agreed with the Second Circuit's finding

in **Abraham** that "where the law of a state requires privity for UCC implied warranty claims, the rule should be the same for [MMWA] implied warranty claims in that state." **Id.** Whereby, because the Illinois UCC clearly requires contractual privity to state a claim for breach of implied warranty, this must follow for similar claims brought pursuant to the MMWA in federal courts. **Id. at *10**.

  The **Soldinger** opinion has been followed by later district court opinions. **See, e.g., Howton v. Winnebago, Inc.,** No. 04-C-8349, 2005 WL 1500926 (N.D. Ill. June 13, 2005)(The MMWA "directs federal courts to look to relevant Illinois law to determine whether an implied warranty was created . . . Illinois courts require privity to establish a claim for breach of implied warranty [but also interpret §] 2308 of the [MMWA] to allow certain non-privity consumers to bring actions for breach of implied warranties . . . [and while the district court] is obligated to follow Illinois Supreme Court interpretations of Illinois law, it is not obligated to follow its interpretations of federal law." (citing RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997))). See also Owens v. Mitsubishi Motor Sales of Am., Inc., No. 04-C-1716, 2004 WL 2433353(N.D. Ill. Oct. 28, 2004); Smith v. Monaco Coach Corp., 334 F. Supp. 2d 1065, 1069 (N.D. Ill. 2004); Kutzler v. Thor Indus. Inc., No. 03-C-2389, 2003 WL 21654260 (N.D. Ill. July 14, 2003); Diamond v. Porsche Cars N. Am., Inc., No. 02-C-414, 2002 WL 31155064 (N.D. Ill. 2002), vacated on other grounds by 70 Fed. Appx. 893 (7th Cir. 2003); Kowalke v. Bernard**

*Chevrolet, Inc.*, No. 99-C-7980, 2000 WL 656660 (N.D. Ill. 2000); *but see Cohen v. AM Gen. Corp.*, 264 F. Supp. 2d 616, 621 (N.D.Ill.2003)(accepting *Szajna* view without discussion). More importantly, however, is the viewpoint as expressed by the Seventh Circuit Court of Appeals and/or the United States Supreme Court, both of which are binding upon this Court.

*Soldinger* stated that the Seventh Circuit "ha[d] not addressed the question of whether privity of contract is a prerequisite to a [MMWA] breach of implied warranty claim brought in Illinois." *Soldinger*, 1999 WL 756174 at *7. Further, the United States Supreme Court has yet to address this issue. *See Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 835, 807 N.E.2d 1165, 1170, 283 Ill. Dec. 324, 330 (1st Dist. 2004). However, there is an existing Seventh Circuit opinion that discusses privity and breach of implied warranty claims pursuant to the MMWA, cites to several of the district court cases as previously listed in this Order, including *Soldinger*, but does not substantively address the disagreement with the Illinois Supreme Court as evidenced by either *Szajna* or *Rothe*. *See Voelker v. Porsche Cars North America, Inc.*, 353 F.3d 516 (7th Cir. 2003).

Examining the holding in *Voelker* regarding privity and implied warranty claims, the Court feels that the Seventh Circuit, at least by implication, agrees with the federal view that privity is required for a plaintiff to state a claim in federal court for breach of implied warranty pursuant to the MMWA in Illinois.

*Voelker* clearly found that "§ 2308 and § 2304(a) [of the MMWA] do[es] not modify, or discuss in any way, a state's ability to establish a privity requirement, whether privity is a prerequisite to a claim for breach of implied warranty under the [MMWA] therefore hinges entirely on the applicable state law. **Id. at 525 (citing *Abraham*, 795 F.2d at 249)(other citation omitted)**. This statement mirrors the same analytical reasoning as shown by the other district court opinions discussed previously within this Order. Further, the Seventh Circuit noted that "[u]nder the law of Illinois, privity of contract is a prerequisite to recover economic damages for breach of implied warranty." ***Id.* (citing to *Rothe*, 119 Ill. 2d at 292, 518 N.E.2d at 1029-30, 116 Ill. Dec. at 208-09)**. Ultimately, the Seventh Circuit concluded in *Voelker* that because the plaintiff lacked privity of contract with the defendant manufacturer, the district court was correct in dismissing his claim of breach of implied warranty pursuant to the MMWA. **Id. at 525-26 (citing *Kowalke*, 200 WL 656660 at *5; *Soldinger*, 1999 WL 756174 at *6-10)**.

      The Court is unsure as to why the *Voelker* opinion was regarded as not addressing the privity issue. The Court is convinced that it does. First, the Seventh Circuit states "This presents an issue of first impression for this court: whether a valid claim for breach of the implied warranty of merchantability under the [MMWA] must allege privity in accordance with the applicable state law. For the reasons set forth below, we conclude that it must." **Id. at 525**. The opinion also cites to *Soldinger* to support its finding – a case which gave an in-depth look at the

reasoning behind the *Szajna* opinion.   Further, **Voelker** does cite to **Roethe**; although not to recognize that Illinois state courts seem to hold privity is not a requirements for such claims, this is indicative that the Seventh Circuit was aware of the opinion and the Illinois Supreme Court's differing viewpoint.

The Court therefore finds that because the Seventh Circuit's opinion in **Voelker** disagrees with the Illinois Supreme Court's position in **Szajna** and **Rothe** - if not directly at least by implication - it is binding authority which this Court must follow.  Moreover, notwithstanding binding precedent, the Court finds the reasoning as expressed by the federal district courts on this issue to be more sound. Accordingly, if there is no privity existing between Plaintiff and Defendant in this case, Counts II through IV of Plaintiff's Complaint must be dismissed.

c.   *Alternate Means to Establish Privity*

In his Response, Plaintiff argues in the alternative that if the Court does not accept the Illinois view in **Szajna** and **Rothe** and finds no contractual privity (and hence, no claim for breach of implied warranty under the MMWA), privity can be established based on several other theories (Doc. 12, p. 7).  Plaintiff asserts that privity should be found to exist between Plaintiff and Defendant based on (1) Defendant's extension of the Warranty to Plaintiff under the MMWA, (2) Defendant's agency relationship with its authorized dealership network, or (3) as a result of Defendant's advertising and marketing of its product[6] (*Id.*).

---

[6] Defendant does not respond to this argument, as there was no Reply filed.

(i)    <u>Extension of a Written Warranty under the MMWA</u>

Plaintiff's first argument that privity can be found to exist between himself and Defendant due to Defendant's extending a written warranty for the Motor Home merely rehashes the underlying holdings of the ***Szajna*** and ***Rothe*** cases (Doc. 12, pp. 7-8). Further, the other cases cited by Plaintiff in support of this notion are not binding upon this Court. As the Court has already determined not to follow the Illinois Supreme Court's holding in ***Szajna*** and ***Rothe***, it finds Plaintiff's instant argument unavailing and insufficient to convince this Court that privity exists between the parties.

(ii)    <u>Defendant's Agency Relationship with the Dealership</u>

As for Plaintiff's second alternate argument that privity is imputed upon Defendant through its agency relationship with the dealership that sold Plaintiff the Motor Home (*Id*. at 9.) Basically, Plaintiff argues that Defendant, based upon its agency relationship with the authorized dealership, effectively becomes the "seller" for purposes of establishing contractual privity with Plaintiff (*Id*.). The only sources Plaintiff cites in support of this agency/privity theory is a non-authoritative Vermont state case opinion from 1988, and New York state case opinion from 1997 and the Restatement of Agency (Second), § 27, on apparent authority, of which, Plaintiff notes, Illinois law is in accord (*Id*.).

The Court notes that in a similar case (coincidentally tried by Plaintiff's attorneys), ***Finch v. Ford Motor Co.***, **327 F. Supp. 2d 942, 946 (N.D. Ill. 2004)**,

the plaintiff also argued in the alternative that privity was established for the purposes of bringing forth implied warranty claims under the MMWA either via agency or Defendant's advertising.  The district court noted that Plaintiff had not cited any legal authority suggesting that Illinois law would allow agency or advertising to create the required privity relationship, nor had Plaintiff established any factual parameters regarding the advertising or agency relationship.  *Id.*  Without such legal or factual support, the district court declined to hold that Illinois law would recognize these theories.  *Id.*

In this case, Plaintiff does not advance any relevant legal arguments or authoritative legal support.  As for whether Plaintiff's Complaint establishes any factual parameters regarding this "agency" relationship, the Court observes that Plaintiff fails to indicate in his Response any allegations to support his argument of agency.  However, the Court finds that Plaintiff did allege in his Complaint that Defendant's Warranty "was represented by [Defendant's] authorized sales agents and advertisements as offering coverage on the entire Motor Home . . ." (Doc. 2, ¶ 4).

The Court finds the reasoning expressed by the *Finch* court as sound, even though the court in *Finch* was ruling on Defendant' Motion for Summary Judgment instead of a motion to dismiss.  However, without sufficient legal or factual support, the Court cannot find that such a claim exists.  Plaintiff offers no legal authority to support the theory that a claim for breach of implied warranty under the MMWA can be brought based upon apparent authority/agency relationship between

Defendant and the dealership. Therefore, the Court is unwilling to extend the reach of the MMWA any further and essentially circumvent the holding of the Seventh Circuit in **Voelker**.

(iii)   <u>Defendant's Advertising and Marketing</u>

Plaintiff also argues that privity was created via Defendant's advertising and marketing campaigns (Doc. 12, pp. 9-11). Plaintiff cites to a Seventh Circuit case holding that through mass advertising and marketing, manufacturers can make express warranties to the public, which can be breached (*Id*. at 10, citing **Wis. Electric Power Co. v. Zallea Bros., Inc.**, **606 F.2d 697, 700 (7th Cir. 1979)**). Plaintiff also cites some other non-authoritative state law cases in support. However, while these cases may hold that advertising can create an express warranty, they do not go so far as to create privity between a plaintiff and a defendant manufacturer of a defective product for purposes of the MMWA.

Factually, Plaintiff alleges in his Complaint that he relied upon Defendant's advertisements (written, verbal, electronic or otherwise) regarding the length and duration of the warranty, in deciding to purchase the Motor Home (Doc. 2, ¶ 13). In further support, Plaintiff has attached a series of advertisements supposedly pertaining to the Motor Coach, labeled as Exhibit A to Plaintiff's Response (Doc. 12, Ex. A). Additionally, Plaintiff has finally attached the Warranty as Exhibit B (Doc. 12, Ex. B). Unfortunately, neither can be considered for purposes of a motion to dismiss, as they are not part of the pleadings. ***See* FED. R. CIV. P.**

**12(b)**.  Further, Defendant's Motion to Dismiss cannot now be construed as a Motion for Summary Judgment, as Defendant was not the party to attach outside documentary evidence to its Motion, nor did it have the benefit of examining Plaintiff's Exhibits A and B *before* it filed the instant motion.

As the Court found in regard to Plaintiff's alternative argument for privity as created via agency, the Court also finds for Plaintiff's argument for privity as created via Defendant's advertising and marketing.  While a defendant manufacturer's advertising and marketing *may* be considered enough to establish an express warranty to the consuming public,[7] the Court refuses to extend the reach of the MMWA to also find that such would create privity to allow for any implied warranties, as an express warranty does not equate to contractual privity in the sense Plaintiff implies.

### d.   *Plaintiff's Argument that Privity is not Required to Bring a Claim for Breach of the Implied Warranty of Habitability*

Plaintiff also argues in his Response that he need not be in privity with Defendant to pursue his claim for breach of the implied warranty of habitability, as stated in Count IV of his Complaint, because the Motor Home is a form of housing and therefore, this implied warranty should also apply to this "home on wheels" (Doc. 12, pp. 11-12).  Plaintiff fails to offer any legal authority to support his theory that the implied warranty of habitability should extend to motor homes.  Although

---

[7]  In support of the theory that advertising creates express warranties, Plaintiff cites to ***Wis. Electric Power Co. v. Zallea Bros., Inc.***, **606 F.2d 697, 700 (7th Cir. 1979)**(Doc. 12, p. 10).

one may view them as hybridized automobiles and residences, the Court is unwilling to go as far as to extend the implied warranty of habitability to such vehicles at this time without any supporting authoritative law. Although a creative effort, Plaintiff's argument falls short of success.

**3.    Violations of the Code of Federal Regulations Pertaining to the MMWA**

Plaintiff brings Counts V and VI (as he states in his Response that he is withdrawing Count VII) pursuant to **15 U.S.C. § 2310(d)** (Doc. 2). Defendant argues that Plaintiff does not state a cause of action for the alleged violations of the Code of Federal Regulations ("CFR"), and has not plead specifically in order for Defendant to determine whether or not there has been a violation (Doc. 9, pp. 6-7). Defendant states that **16 C.F.R. § 700.5** (Count V) sets forth "expressions of general policy" with respect to MMWA warranties. Plaintiff responds that § 700.5 provides a cause of action[8] for those damaged by a supplier's failure to meet statements and representations of general policy concerning customer satisfaction, which Plaintiff argues was plead in his Complaint in ¶ 13 (Doc. 12, p. 14).

Plaintiff alleged that he relied on Defendant's advertisements regarding

---

[8] **16 C.F.R. § 700.5** reads, in pertinent part, as follows (emphasis added):

(a) Under section 103(b), statements or representations of general policy concerning customer satisfaction which are not subject to any specific limitation need not be designated as full or limited warranties, and are exempt from the requirements of sections 102, 103, and 104 of the Act and rules thereunder. *However, such statements remain subject to the enforcement provisions of section 110 of the Act* [§ 2310 of the MMWA], and to section 5 of the Federal Trade Commission Act, 15 U.S.C. 45.

the length and duration of the Warranty and on the dealership's sales agent's representation regarding the same when deciding to purchase the Motor Home. Plaintiff also alleges he relied on Defendant's statements or representations of general policy concerning customer satisfaction when deciding to purchase the Motor Home and that Defendant's failure to meet its own alleged policy violated § 700.5 (Doc. 2, ¶ 13). Again, Plaintiff refers to the advertisements attached as Exhibit A to his Response.

Count VI alleges a violation of § 701.3, which Plaintiff alleges in ¶¶ 14-16 of his Complaint, stating that Defendant's Warranty failed to identify in a single document all other warrantors other than itself as required by § 701.3, leading Plaintiff to believe Defendant was providing a full Warranty. Plaintiff makes the argument that this issue in not ripe in that Defendant has failed to argue that any components are *not* covered under its Warranty (Doc. 12, p. 15). In turn, Defendant argues that as § 701.3 sets forth "written warranty terms" requirements, it is unable to determine whether it violated this section, as Plaintiff has not plead the language nor attached the Warranty at issue. Plaintiff counters this with the argument that Defendant should be able to access a copy of its own warranty.

The Court finds that Plaintiff has adequately plead proper causes of action in Counts IV and V, as Defendant offers no valid legal argument or legal authority as to why such violations are not proper causes of action. Therefore, under federal notice-based pleadings standards, Plaintiff has adequately apprised Defendant of the nature of the claim.

### III.  **CONCLUSION**

For the reasons as set forth in this Order, Defendant's Motion to Dismiss (Doc. 8) is hereby **GRANTED IN PART** and **DENIED IN PART**.  Counts II, III and IV (dealing with breach of implied warranties) in Plaintiff's Complaint (Doc. 2) are hereby **DISMISSED WITH PREJUDICE**, as the Court finds privity must exist between the parties to state such claims pursuant to the MMWA, and Plaintiff has failed to plead or argue that such privity exists and based on his pleading it is clear none can.  The Court also finds that Plaintiff has stated in his Response that he "withdraws his non-disclosure **16 C.F.R. § 702.3**  and **15 U.S.C. § 2303** averment against Defendant.  The issue is therefore moot" (Doc. 12, p. 16).  As these averments were embodied in Count VII of Plaintiff's Complaint, the Court hereby deems that Count VII is **DISMISSED WITHOUT PREJUDICE**.  The remaining Counts I, V and VI of Plaintiff's Complaint are valid and will not be dismissed.

**IT IS SO ORDERED.**

Signed this 31st day of March, 2006.

/s/          David RHerndon
**United States District Judge**